# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Loi Nguyen,** | Case No. SACV 18-01825 AG (DFMx) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE** |
| **Durham School Services, L.P. et al.,** | |
| Defendants. | |

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (together, "*Twiqbal*"), the Supreme Court gave the key to unlock access to federal courts by defining the pleading requirements of Federal Rule of Civil Procedure 8(a). By adding the word "plausibility" to the requirements for stating a claim for relief, the Court retired the more lenient "notice" pleading standard that governed the adequacy of complaints since *Conley v. Gibson*, 355 U.S. 41 (1957). But the Court has never said whether *Twiqbal*'s plausibility requirement extended to all types of pleadings, including pleading affirmative defenses in an answer.

This case presents a resulting question—one that's divided federal district courts for the better part of a decade. Should the stricter plausibility requirement set forth in *Twiqbal* apply equally to pleading affirmative defenses in an answer? The short answer is plainly "no." The text of Federal Rule of Civil Procedure 8, the principles underlying the Supreme Court's decisions in *Twiqbal*, and the practicalities of pretrial litigation all weigh against extending the plausibility requirement to affirmative defenses. This Court now concludes, as settled precedent suggests, that affirmative defenses may be stated in "general terms" and need only provide the plaintiff with "fair notice" of their nature. *See Kohler v. Flava Enterprises, Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) (applying the fair notice standard without referencing the *Twiqbal* standard).

For the following reasons, the Court GRANTS IN PART and DENIES IN PART the Plaintiff Loi Nguyen's ("Nguyen") pending motion to strike WITH LEAVE TO AMEND. Defendant Durham School Services, L.P. ("DSS") may file an amended answer within **21 days** of this Order.

**1. PRELIMINARY MATTERS**

Before reviewing Nguyen's motion, the Court addresses two preliminary issues raised by the parties' briefing. DSS argues Nguyen's motion is untimely under the Federal Rules, and that Nguyen failed to comply with the meet and confer requirement of Local Rule 7-3. (Opp'n, Dkt. No. 15 at 2–3.) Moving forward, the Court expects the parties to comply with the spirit and letter of the Federal Rules and this Court's Local Rules. For now, in the interest of justice, the Court reviews the pending motion on the merits.

**2. BRIEF BACKGROUND**

A brief review of the facts is helpful. Nguyen worked as a maintenance mechanic for DSS. (Compl., Dkt. No. 1-1 at ¶¶ 1, 15, 20.) Nguyen alleges DSS engaged in a variety of misconduct. Specifically, Nguyen claims DSS discriminated against Nguyen because of his age, retaliated against Nguyen because of his union involvement, and deprived Nguyen of legally mandated meal and rest breaks. (*Id.* at ¶¶ 22, 26, 28, 30, 31.) Nguyen was eventually terminated by DSS. (*Id.* at ¶ 28.) Nguyen then brought this case asserting nine different state law claims concerning Nguyen's employment with DSS. (*See* Compl. at 17.)

Nguyen chose to file this case involving state law claims in Orange County state court, but DSS removed it to this Court under 28 U.S.C. Sections 1332(a)(1) and 1441(a)–(b). (Notice of Removal, Dkt. No. 1 at 1.) After DSS removed, DSS filed an answer to Nguyen's complaint stating twenty-one affirmative defenses. (Answer, Dkt. No. 12 at 12–17.) DSS also included an "other additional defenses" allegation in its answer purporting to preserve DSS's "right to allege other additional defenses as they may become known during discovery or otherwise". (*Id.* at 17.)

A few weeks later, Nguyen moved to strike eleven of DSS's twenty-one defenses, and DSS's "other additional defenses" allegation. (Mot., Dkt. No. 14 at 2.) Nguyen argues that the

affirmative defenses at issue are "not affirmative defenses at all", are insufficiently pled, and are "immaterial or impertinent." (*Id.* at 2–3.) DSS responds that its affirmative defenses are appropriate and adequately alleged, and further argues that, in any event, Nguyen isn't prejudiced by DSS's answer. (Opp'n at 4–5.) The Court questions whether asserting twenty-one affirmative defenses and attacking fifteen of them proportionally pursues justice in this case. *Cf.* Fed. R. Civ. P. 26(b). But the Court plows ahead with these procedural perturbations.

**3. LEGAL STANDARD**

"[T]he court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). At issue here, of course, are the pleading requirements of Rule 8. A motion to strike under Rule 12(f) is designed to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010) (internal quotation marks omitted). Appropriately, motions to strike are generally "disfavored," *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 965 (9th Cir. 2014), and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *U.S. ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1038 (C.D. Cal. 2012).

**4. ANALYSIS**

Since Nguyen argues DSS's affirmative defenses are, among other things, insufficiently pled, the Court must first determine what pleading standard under Rule 8 governs affirmative defenses. To set the stage, the Court considers how other courts have answered this question before and after *Twiqbal*.

### 4.1 Affirmative Defenses Before and After *Twiqbal*

Before *Twiqbal*, courts generally relied on a "fair notice" pleading standard. *See Conley*, 355 U.S. at 47 ("[A]ll the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."). And "[a]lthough the Supreme Court never decided the issue, nearly all of the federal courts of appeals agreed that the pleading standard for affirmative defenses would be the same as that for claims." N. Pysno, *Should Twombly and Iqbal Apply to Affirmative Defenses?*, 64 Vand. L. Rev. 1633, 1646 (2011); *see also Wyshak v. City Nat. Bank*, 607 F.2d 824 (9th Cir. 1979) ("The key to determining the sufficiency of pleading an affirmative defense is whether it gives the plaintiff *fair notice* of the defense." (citing *Conley*, 355 U.S. at 47)). This meant that federal courts only "required the pleading of an affirmative defense to set forth the nature and grounds for the affirmative defense, but did not require a detailed statement of facts" supporting that affirmative defense. *See J & J Sports Productions, Inc. v. Ramirez Bernal*, No. 1:12-cv-01512-AWI-SMS, 2014 WL 2042120, at *2 (E.D. Cal. May 16, 2014) (citing *Kohler v. Islands Restuarants, LP*, 280 F.R.D. 560, 564 (S.D. Cal. 2012)). The result? It was usually sufficient to plead affirmative defenses using boilerplate, and motions to strike such defenses as factually deficient were rarely granted. *See* Psyno, *supra*, at 1647 (citing *Shinew v. Wszola*, No. 08–14256, 2009 WL 1076279, at *2 (E.D. Mich. Apr. 21, 2009)).

Cue *Twombly*, which rewrote the fair notice standard—at least when pleading claims for relief. When *Twombly* retired *Conley*, the Court declared that a claim must be supported by "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Then, in *Iqbal*, the Court further explained that a claim is plausible on its face when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

5

at 679. The Court's concern in these decisions wasn't that "the allegations in the complaint were sufficiently 'particularized,'" but instead, whether "the complaint warranted dismissal because it failed in toto to render plaintiffs' entitlement to relief plausible." *Twombly*, 550 U.S. at 569 n.14. Thus, "plausibility" was read into Rule 8.

But after *Twiqbal*, the question remained whether "fair notice" still governed affirmative defenses. To this day, this question remains mostly unanswered. Indeed, "[n]either the United States Supreme Court nor the Ninth Circuit has determined what standard should be used to determine the sufficiency of a defendant's affirmative defenses, and accordingly, there has been significant disagreement amongst federal district courts within this Circuit." *Export Development Canada v. ESE Electronics Inc.*, No. CV 16-02967 BRO (RAOx), 2017 WL 1838581, at *3 (C.D. Cal. May 4, 2017). While some courts have applied a "heightened standard," other courts have held that the "long-used 'fair notice' standard continues to apply." *Id.*; *see also Vogel v. Linden Optometry APC*, No. CV 13-00295 GAF (SHx), 2013 WL 1831686, at *3 (C.D. Cal. Apr. 30, 2013).

Federal courts in this Circuit that still apply the fair notice standard "have done so based on the Ninth Circuit's continued references to and use of this standard, even after the Supreme Court's decision in *Twombly* and *Iqbal*." *Export Development Canada*, 2017 WL 1838581, at *4; *see Kohler*, 779 F.3d at 1019 (applying the "fair notice" standard); *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010) (same); *Kohler*, 280 F.R.D. at 566 (same). And these courts have generally reaffirmed that, under the fair notice standard, the defendant need only "state the nature and grounds for the affirmative defense". *Kohler v. Big 5 Corp.*, No. 2:12–cv–00500–JHN–SPx, 2012 WL 1511748, at *2 (C.D. Cal. Apr. 30, 2012). A detailed statement of facts isn't required. *Id.*

With this backdrop in mind, the Court now turns to the pending pleading issue: whether *Twiqbal* applies to affirmative defenses.

### 4.2 Whether *Twiqbal* Applies to Affirmative Defenses

The Court now concludes that the strict pleading standard of *Twiqbal* should not apply to affirmative defenses and instead applies the less-demanding "fair notice" standard used by the Ninth Circuit in *Kohler. See Kohler*, 779 F.3d at 1019.

#### 4.2.1 Textual Distinctions

Textual distinctions in Federal Rule of Civil Procedure 8 suggest different pleading standards should apply to pleading claims for relief, on the one hand, and pleading affirmative defenses, on the other. Under Rule 8(a), the party stating a claim for relief—usually the plaintiff—must provide "a short and plain statement of the claim *showing* that the pleader is entitled to relief". Fed. R. Civ. P. 8(a)(2) (emphasis added). But Rules 8(b) and 8(c) require less of the party responding to a claim for relief—usually the defendant. Rule 8(b) only requires responsive pleadings to, among other things, *state* in "short and plain terms" any defenses. Fed. R. Civ. P. 8(b)(1). Likewise, Rule 8(c) only requires that an affirmative defense be "affirmatively *state*[*d*]". Fed. R. Civ. P. 8(c) (emphasis added). The important textual distinction here is between the words "show" and "state". When pleading claims in a complaint, Rule 8(a) requires a plaintiff to *show* it's entitled to relief. But when a defendant asserts affirmative defenses in an answer, Rules 8(b) and 8(c) only require that those defenses be *stated*. Showing something, rather than simply stating it in plain terms, is a more difficult task. *See Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 123 (1989) ("We give the Federal Rules of Civil Procedure their plain meaning . . . ."). It makes sense, then, that a higher pleading standard should apply to one but not the other.

But are these textual distinctions mere semantics? Some courts think so. *See, e.g.*, *Vogel v. Hunting Oaks Delaware Partners, LLC* 291 F.R.D. 438, 441 (C.D. Cal. 2013); *Barnes v. AT&T*

*Pension Benefit Plan–Nonbargained Program*, 718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010). This view gives little credit to the drafters of the Federal Rules, who presumably chose their words with care and purpose. Nor does this view conform with the Supreme Court's rules regarding statutory interpretation. *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 454 (2002) (cautioning courts from assuming that "differing language in . . . two subsections" of the same statute "has the same meaning" because of a "simple mistake in draftsmanship"). Indeed, if the drafters of the Federal Rules wanted a uniform pleading standard for all pleadings, they should have used the same language across Rule 8's subsections.

### 4.2.2 Principles Underlying *Twiqbal*

The principles underlying the Supreme Court's decisions in *Twiqbal* also counsel against extending the plausibility requirement to affirmative defenses. Indeed, the Supreme Court anchors their analysis in *Twiqbal* to Rule 8(a), which concerns "claims for relief". *See Iqbal*, 556 U.S. at 679 ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))); *Twombly*, 550 U.S. at 555–56 ("The need at the pleading stage for allegations plausibly suggesting [the claim] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.") And neither opinion suggests *Twiqbal*'s heightened pleading standard should apply to affirmative defenses. In fact, neither opinion mentions affirmative defenses *at all*. Because *Twiqbal* is limited to pleading claims for relief under Rule 8(a), applying the plausibility requirement to pleading affirmative defenses would "run counter to the Supreme Court's warning in *Twombly* that legislative action, not 'judicial interpretation,' is necessary to 'broaden the scope' of specific federal pleading standards." *Kohler*, 280 F.R.D. at 566 (quoting *Twombly*, 550 U.S. at 569 n.14).

Still, many courts extend *Twiqbal* to affirmative defenses by reasoning that, because

8

*Twiqbal* reconceptualized "fair notice" pleading in its entirety, it applies equally to affirmative defenses. According to these courts, this makes sense because, before *Twiqbal*, "fair notice" was the relevant standard for pleading both claims for relief and affirmative defenses. *Wyshak*, 607 F.2d at 827 (citing *Conley*, 355 U.S. at 47). But again, the Supreme Court's analyses in *Twiqbal* rest on language in Rule 8(a) only. Courts should be wary of importing language from that Rule, or *Twiqbal*'s interpretation of it, to a different rule that lacks that language. *See Lopez v. Asmar's Mediterranean Food Inc.*, No. 1:10cv1218 (JCC), 2011 WL 98573, at *2 (E.D. Va. Jan. 10, 2011). And in any event, it seems "unlikely that the Supreme Court 'would have ushered in such a radical change in legal landscape [to pleadings in their entirety] *sub silentio*.'" *Lockheed Martin Corp. v. U.S.*, 973 F. Supp. 2d 591, 594 (D. Md. 2013) (quoting *Rosa v. Bd. of Educ. of Charles County, Md.*, No. 8:11–cv–02873–AW, 2012 WL 3715331, at * 10 (D. Md. Aug 27, 2012)).

One more thing. Some say *Twiqbal* was designed by a conservative Supreme Court to "close the courthouse doors" to questionable plaintiffs hoping to litigate their claims in federal court. *See* Erwin Chemerinsky, *Closing the Courthouse Doors*, 90 Denv. U. L. Rev. 317, 328–29 (2012). If this is true, then the logic grounding the Court's decisions in *Twiqbal* shouldn't apply to pleading affirmative defenses in an answer.

### 4.2.3   Practical Distinctions

There are also practical distinctions between a plaintiff's complaint and a defendant's answer that weigh against extending *Twiqbal* to affirmative defenses. The most obvious of these distinctions is the amount of time each party has to compose their respective pleading. Plaintiffs can decide when to file a complaint within the relevant statute of limitations, giving plaintiffs ample opportunity to develop factual support for their claims and draft their complaints accordingly. But defendants only have twenty-one days after being served with a summons and complaint to draft their response. *See* Fed. R. Civ. P. 12(a). And, within this twenty-one-day window, defendants must also find a lawyer and investigate the facts of the case. This

"asymmetry of information and time" highlights a "fundamental difference between the function of pleading for plaintiffs and defendants." *See* Pysno, *supra*, at 1656 (citing *Odyssey Imaging, LLC v. Cardiology Assocs. of Johnston, LLC*, 752 F. Supp. 2d 721, 726 (W.D. Va. 2010)). Because of this distinction, it's "reasonable to impose stricter pleading requirements on a plaintiff." *Kohler v. Staples the Office Superstore, LLC*, 291 F.R.D. 464, 469 (S.D. Cal. 2013).

This practical distinction concerning timing ties into the looming threat of waiver. Defendants risk permanently waiving any affirmative defenses not raised in their initial response. *See* Fed. R. Civ. P. 12(h); *see also Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730, 735 (9th Cir. 1988). And if *Twiqbal*'s plausibility requirement was extended to affirmative defenses, waiver is much more likely. Indeed, defendants would be forced to waive any defenses that couldn't be adequately supported in the three short weeks they have to draft their answers. And although defendants could avoid waiver by amending their answers under Rule 15, "this indirect solution transforms the amendment process into a corrective mechanism never envisioned by the Rulemakers." Justin Rand, *Tightening Twiqbal: Why Plausibility Must Be Confined to the Complaint*, 9 Fed. Cts. L. Rev. 79, 99 (2016). The heightened risk of waiver and the affect this risk may have on the amendment process further justifies holding defendants to a more lenient pleading standard than plaintiffs.

Further, attacks on answers usually occur, as here, through a motion to strike under Rule 12(f). Such motions have long been "disfavored." *Petrie*, 761 F.3d at 965. But applying *Twiqbal*'s plausibility requirement to affirmative defenses would encourage litigants to file more 12(f) motions, thus undercutting the longstanding principle that Rule 12(f) motions are a drastic remedy and should rarely be granted. *See Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) ("[S]triking a party's pleadings is an extreme measure, and, as a result, . . . motions to strike . . . are viewed with disfavor and are infrequently granted." (internal quotations omitted)). And in any event, the easier pleading standard is more suitable for defeating a "disfavored" motion.

There's one final practical distinction bearing mention, and it's a simple one: the plaintiff is the party who initiates the lawsuit. It makes sense, then, to ask more of the plaintiff at the outset of the case. After all, a defendant doesn't come to court by choice—the plaintiff forces them to appear. And it's the plaintiff who invokes the court's jurisdiction in the first instance. The Supreme Court touched on this in *Twombly*, explaining that a heightened pleading standard was necessary to prevent plaintiffs from "tak[ing] up the time of a number of other people" with "largely groundless claim[s]". *Twombly*, 550 U.S. at 558 (internal quotations and citations omitted). But affirmative defenses don't impose these same burdens. Affirmative defenses only come into play after the game has already started and the players have already taken the field. Affirmative defenses don't initiate a lawsuit, nor do they invoke the court's jurisdiction. It's therefore more important to screen complaints for adequate factual support early on in a lawsuit than affirmative defenses.

Put simply, the heightened pleading requirement of *Twiqbal* doesn't apply to affirmative defenses because of the textual distinctions in the plain language of Rule 8, the working principles underlying the Supreme Court's decisions in *Twiqbal*, and the practicalities of pretrial litigation. Instead, affirmative defenses need only be stated in "general terms" and provide "fair notice" of their nature. *See Kohler*, 779 F.3d at 1019.

### 4.3   The Present Motion

Having concluded affirmative defenses are governed by a fair notice standard, the Court turns back to the case at hand. Nguyen moves to strike fifteen of DSS's twenty-one affirmative defenses and DSS's "other additional defenses" allegation from DSS's answer. (Mot. at 2.) Nguyen argues these defenses should be stricken for various reasons. (*Id.*) These issues were thoroughly reviewed with the parties leading up to the hearing. Thus, it's sufficient here to address these issues broadly.

11

To the extent Nguyen argues some of DSS's defenses should be stricken for not being affirmative defenses at all, the Court mostly agrees. *See Zivkovic v. Southern California Edison Co.*, 302 F. 3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."); *see also Amini Innovation Corp. v. McFerran Home Furnishings Inc.*, No. CV 13-6496 RSWL (SSx), 2014 WL 360048, at *4 (C.D. Cal. Jan. 31, 2014) ("A defense that reserves the right to assert defenses later is not a defense.") With the exception of DSS's first defense, these defenses are more appropriately characterized as specific denials to certain allegations in Nguyen's complaint. But because DSS already makes these denials elsewhere in its answer, the Court finds that these defenses should be stricken as redundant. *See* Fed. R. Civ. P. 12(f). And when a defendant oddly chooses to include these defenses, the burden of proof potentially shifts from the plaintiff to the defendant, which should be avoided.

But the Court disagrees with Nguyen's arguments about the factual sufficiency of DSS's defenses. Ngyuyen claims many of DSS's affirmative defenses fail because they consist of "bare-bones, conclusory allegation[s]". (Mot. at 7.) Not so. As discussed previously, fair notice is a less demanding standard than what *Twiqbal* requires. *See Kohler*, 779 F.3d at 1019 (noting that fair notice only requires "describing [an affirmative] defense in 'general terms'"); *see also* 5 C. Wright & Miller, Federal Practice and Procedure § 1274, p. 616–17 (3d ed. 2004) ("[A]n affirmative defense may be pleaded in general terms and will be held to be sufficient, and therefore invulnerable to a motion to strike, as long as it gives the plaintiff fair notice of the nature of the defense."). And DSS has provided fair notice here.

Nor is the Court convinced that DSS's defenses are immaterial or impertinent, as Nguyen suggests. (Mot. at 9–10.) At this early stage, it can't be said that these defenses bear "no essential or important relationship" to Nguyen's claims, or that these defenses aren't otherwise necessary to the issues in question. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

12

So, in light of all this, the Court makes the following rulings. The Court GRANTS Nguyen's motion to strike DSS's fifteenth and seventeenth affirmative defenses and DSS's "other additional defenses" allegation. The Court DENIES Nguyen's motion to strike DSS's other thirteen affirmative defenses.

### 4.4  Whether Leave to Amend Should Be Granted

DSS asks the court for leave to amend any defenses that are stricken. (Opp'n at 11.) "Unless it would prejudice the opposing party, courts freely grant leave to amend stricken pleadings." *Kohler*, 280 F.R.D. at 564; *see also Wyshak*, 607 F.2d at 826 ("In the absence of prejudice to the opposing party, leave to amend should be freely given."). Nguyen gives no reason why granting leave to amend here would result in prejudice. The Court therefore GRANTS DSS leave to amend its answer.

### 5. DISPOSITION

For these reasons, the Court GRANTS IN PART and DENIES IN PART Nguyen's motion to strike WITH LEAVE TO AMEND. DSS may file an amended answer within **21 days** of this Order.

DATED: February 20, 2019

_____
Andrew J. Guilford
United States District Judge